IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEONARD REYNOLDS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NANCY BERRYHILL, )<br>Acting Commissioner of )<br>Social Security, )<br>)<br>Defendant. ) | No. 17 C 6049<br><br>Magistrate Judge Sidney I. Schenkier |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff, Leonard Reynolds, brought this action pursuant to 42 U.S.C. § 405(g) (2008) for judicial review of the decision of the Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits ("DIB"). On December 12, 2014, plaintiff filed an application for DIB, alleging disability beginning October 27, 2013. (R. 50). Mr. Reynolds' initial claim was denied on April 22, 2015 (R. 58). The claim was denied upon reconsideration on September 15, 2015 (R. 69). Mr. Reynolds then filed a written request for hearing on November 16, 2015 and was granted a hearing before an administrative law judge ("ALJ"), which took place on November 14, 2016 (R. 29).

On March 1, 2017, the ALJ issued a written decision, denying Mr. Reynolds' DIB application, based on her determination that he did not have a severe impairment or combination of impairments during the relevant time period (R. 11-28). Mr. Reynolds requested review of the

---

[1] On October 23, 2017, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to this Court for all proceedings, including entry of final judgment (doc. # 9).

decision and, on June 22, 2017, the Appeals Council denied the request for review, making the ALJ's decision the final determination of the Commissioner (R. 1-7).

On August 18, 2017, Mr. Reynolds then initiated this civil action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). Plaintiff has now filed a motion seeking reversal and remand of the Commissioner's decision (doc #12). The Commissioner has filed a cross-motion asking the Court to affirm the decision (doc #20). For the following reasons, we reverse the Commissioner's final decision and remand for further consideration.

## I.

Plaintiff was 54 years old at the time of the administrative hearing (R. 153). He has an eleventh-grade education and has not obtained a GED (R. 33, 36). Mr. Reynolds' last steady job was in 2000, from which he was fired for poor attendance (R. 317). Mr. Reynolds lives alone in the basement of a two-flat apartment; his sister and her family live upstairs (R.34).

### A.

Mr. Reynolds was diagnosed with type two diabetes mellitus in 2013 (R. 287). He received primary care treatment from Sylvia Shokunbi, M.D., at the Esperanza Health Center; between April 2014 and October 2016, he had eight appointments (anywhere from one to six months apart), primarily to check his diabetes and high blood pressure (R. 320-336, 368-94). In April 2014, Dr. Shokunbi described Mr. Reynolds' diabetes as uncontrolled and diagnosed him with hypertension, hyperlipidemia, and chronic kidney disease (R. 286). At that time, Mr. Reynolds complained of foot pain, which had begun a month previously and occurred on a daily basis (R. 289-90). As of September 2014, Mr. Reynolds was taking metformin and Novolin to treat his diabetic condition, which Dr. Shokunbi described as being controlled (R. 292).[2]

---

[2] There are no medical records between April and September of 2014.

Mr. Reynolds visited Dr. Shokunbi again in January 2015 and then not again until July of that same year (R. 301-04, 325-29). In July 2015, Dr. Shokunbi referred plaintiff to a podiatrist because of his complaints about foot pain (R. 325). Mr. Reynolds saw the podiatrist in December 2015 and complained of pain in his right angle, bilateral foot pain, and pain on palpation of his toenails (R. 384, 386). The podiatrist noted that from a neurologic standpoint, sensation in both feet was diminished, and there was a calcaneal spur and lateral soft tissue swelling in claimant's ankle (R. 386). The podiatrist sharply debrided Mr. Reynolds' toenails (*Id.*).

In January 2016, Dr. Shokunbi prescribed Mr. Reynolds Norco to treat the continued foot pain and noted that it was caused by his diabetic neuropathy (R. 377, 380). In March 2016, Mr. Reynolds described a sharp, pins and needles pain in both feet that had been intermittent over the last six to twelve months and was accompanied by numbness of the legs and feet (R. 376, 379). He also reported pain on plantar flexion of the right foot, but with full range of motion of the feet (R. 377). Dr. Shokunbi refilled Mr. Reynolds' prescription for Norco and continued him on gabapentin for diabetic neuropathy (*Id.*). Mr. Reynolds' complaints of foot pain continued through October 2016 when his prescriptions were again refilled (R. 370).

With respect to Mr. Reynold's complaints of mental and cognitive impairments, treatment records from throughout his appointments with Dr. Shokunbi note Mr. Reynolds as having a depressed affect beginning in November 2013 (R. 290, 293, 326, 371, 372). However, with the exception of the December 2014 appointment where Mr. Reynolds reported having little interest or pleasure in doing things (R. 298), the records do not show that Mr. Reynolds reported any depressive symptoms to Dr, Shokunbi (R. 290, 294, 302-3, 328, 372, 384).

## B.

In July 2015, Mr. Reynold's attorney arranged a psychiatric examination with Mark Amdur, M.D. (R. 316). Dr. Amdur's examination included a review both of Mr. Reynolds' physical and mental impairments. As part of his physical examination, Dr. Amdur performed a Romberg test, which noted demonstrated increased sway and an inability to perform tandem gait (R. 318).[3] These results were consistent with Reynolds' reported balance issues and feelings of pins and needles in his feet (*Id.*). Dr. Amdur diagnosed Mr. Reynolds with probable peripheral neuropathy (R. 319).

With respect to claimant's mental impairments, Dr. Amdur evaluated Mr. Reynolds' mental and cognitive function based on his complaints of depressive symptoms and memory issues (R. 316). Mr. Reynolds described memory problems such as forgetting recent conversations and inattention when using the stove (R. 317). As part of his examination, Dr. Amdur administered the Montreal Cognitive Assessment ("MoCA") to Mr. Reynolds.[4] A score of 26 or above on the MoCA is considered normal (R. 319)[5]. Mr. Reynolds scored a 16 out of 30, with particularly low scores in visuospatial and executive functioning (*Id.*). Dr. Amdur diagnosed Mr. Reynolds with major depression and a cognitive disorder (*Id.*). He stated that Mr. Reynolds' impairments would

---

[3] The Romberg test involves having a patient stand still with his or her heels together and eyes closed. It is positive if a patient loses their balance. *See* The Precise Neurological Exam: Coordination, Gait and Romberg Test. New York University School of Medicine. https://informativs.med.nyu.edu/modules/pub/neurology/coordination.html. visited on November 28, 2018.

[4] *See* Deirdre M. Carolan Doerflinger, *Mental Status Assessment in Older Adults: Montreal Cognitive Assessment: MoCA Version 7.1 (Original Version)*, Hartford Inst. for Geriatric Nursing NYU (2012), https://consultgeri.org/try-this/general-assessment/issue-3.2.pdf; *see also* http://www.mocatest.org/, visited on November 28, 2018.

[5] *See* Emma Borland et al., *The Montreal Cognitive Assessment: Normative Data from a Large Swedish Population-Based Cohort*, 59 J. Alzheimer's Disease 893 (2017) (providing a scoring methodology for MOCA results in elderly individuals). https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5545909/, visited on November 28, 2018.

interfere with his capability to tolerate stress, to persist at simple work, and to maintain attention and concentration (*Id.*).

Debra Robinson and Tawanna Calvin, Mr. Reynolds' sisters, also completed third party function reports. The reports indicate that Mr. Reynolds began occasionally using a walker or a cane to help with balance in 2012 (R. 199, 226). The reports also indicate that Mr. Reynolds' is capable of walking only up to one quarter of a block before taking a break (R. 207). Mr. Reynolds' sister also indicated that Mr. Reynolds had difficulty with his memory, needed repeated spoken directions, and had to be reminded weekly to do chores such as taking out the garbage (R. 195). She also stated that Mr. Reynolds could handle money, but "need[ed] to count slower to ensure amount is correct" (R. 206).

### C.

Several state agency doctors evaluated Mr. Reynolds as part of his claim for benefits. In March 2015, agency physician Henry Fine, M.D., evaluated Mr. Reynolds' mental capacity (R. 312-315). Mr. Reynolds reported a sad mood, low energy and poor sleep, and memory and concentration issues (R. 312). After an examination, Dr. Fine diagnosed Mr. Reynolds with a mild persistent depressive disorder, dysthymic type, and stated that Mr. Reynolds' psychiatric issues "have not *seemed* to interfere with his functioning" (R. 315) (emphasis added). Dr. Fine also noted, however, that cognitively Mr. Reynolds suffered "immediate memory deficit, poor fund of information, calculations problems, and problems abstracting" (*Id.*).

In April and September 2015, state agency doctors, Marion Panepinto, M.D. and James Madison, M.D., reviewed some of Mr. Reynolds' medical records to determine if his physical impairments entitled him to benefits (R. 51-56, 59-68). Specifically, the doctors reviewed Dr. Shokunbi's treatment notes through July 2015, Dr. Fine's report, and the third-party function

reports completed by Mr. Reynold's sisters (R. 61-64, 66). Drs. Panepinto and Madison did not review the podiatrist records, Dr. Shokunbi's treatment notes from after July 2015, or the findings of peripheral neuropathy by Dr. Amdur in July 2015 (R. 51-4, 63-5). On initial review and reconsideration, Drs. Panepinto and Madison opined that Mr. Reynolds' physical impairments were not severe; they primarily based their determinations of Dr. Shokumbi's notes regarding plaintiff's diabetes (R. 57, 64-65).

In April and September 2015, two doctors, Kirk Boyenga, Ph.D., and Phyllis Brister, Ph.D., reviewed Mr. Reynolds' medical records with respect to his mental health impairments. The record does not reflect that Dr. Amdur's report was among the evidence Dr. Brister reviewed regarding Mr. Reynolds' mental health; the parties agree that Dr. Boyenga did not see it, as his review of the record occurred prior to Mr. Reynolds' appointment with Dr. Amdur. (R. 266; Def. Mem. in Support at 8). Drs. Boyenga and Brister opined that Mr. Reynolds' mental health impairments were only of mild severity because there was no mental health treatment indicated in the file and plaintiff's daily activities were not significantly restricted (R. 55-56, 65-66). Neither opinion discussed Mr. Reynolds' cognitive function.

### D.

At his hearing in November 2016, Mr. Reynolds testified that he lives in a basement apartment below the apartment where his sister lives (R. 34). He stated that he started experiencing pain in his feet from his diabetes three years earlier and that walking made it worse (R. 39, 40, 43). At the time of the hearing, Mr. Reynolds used a cane to help relieve the pain in his feet when he walked and said he could only stand for 30 to 60 minutes before needing to sit down (R. 42, 44). Mr. Reynolds testified that he would not be able to stand or walk six hours out of an eight-hour

day (R. 45). During the day, Mr. Reynolds watched TV. He could do his own cooking and light cleaning, but his sister shopped for him (R. 41-2).

### E.

In her opinion, the ALJ described the familiar five-part test for determining disability, 20 CFR 416.920(a) (R. 14-16). At Step One, she determined that the plaintiff had not engaged in substantial gainful activity during the period from his alleged onset to his date of last insured (R. 16). *See* 20 C.F.R. 416.971 *et seq.* At Step Two, the ALJ found that Mr. Reynolds did not have a severe impairment or combination of impairments, *citing* 20 C.F.R. § 404.1521 (R. 20).

To make that determination, the ALJ followed the process required by 20 C.F.R. § 404.1529. She found that during the period of claimed disability, plaintiff had underlying medically determinable physical impairments of: obesity, affective disorder, chronic kidney disease, essential hypertension, diabetes mellitus, renal failure, and respiratory failure (R. 16). The ALJ then evaluated the intensity, persistence, and limiting effects of the plaintiff's symptoms from these impairments to determine the extent to which they limited his ability to do basic work activities (R. 16-24). The ALJ found that there was insufficient evidence to support a finding that any of these impairments was severe (R. 24). We focus on the ALJ's determination with regard to plaintiff's diabetes, as plaintiff does not challenge the ALJ's findings that the other physical impairments were not severe.

The ALJ stated that it appeared that Mr. Reynolds' diabetes was well-controlled, and that a close review of the medical evidence showed that he was "without symptoms associated with diabetes" (*Id.*). With respect to Mr. Reynolds' foot pain, the ALJ acknowledged that Mr. Reynolds saw a podiatrist in December 2015, that he complained of pins and needles and foot pain in March 2016, and that Dr. Shokunbi assessed him to have diabetic neuropathy in October 2016. The ALJ

7

also noted that Dr. Amdur diagnosed peripheral neuropathy after administering the Romburg test in 2015 (R. 17-19). However, the ALJ did not assign a weight to Dr. Amdur's diagnosis of peripheral neuropathy. In contrast, the ALJ gave "great weight" to the opinions of the state agency physicians and psychologists, stating generally that "they are consistent with the treatment notes including negative reviews of systems and unremarkable examination findings" (R. 23).

The ALJ also evaluated Mr. Reynold's mental health using the "Paragraph B" factors for determining mental impairments (R. 23). 20 C.F.R., Part 404, Subpart P, Appendix. The ALJ found generally that Mr. Reynolds had only mild limitations in all four Paragraph B areas (R. 23-4). Specifically, she noted that Mr. Reynolds lived alone, was able to prepare simple meals, grocery shop, do chores, and use public transit (R. 23). The ALJ also noted that, according to the function report he completed as part of his application for benefits, Mr. Reynolds was able to pay bills, count change, and had a bank account (*Id.*). Treatment notes from the Esperanza Medical Center indicated that Mr. Reynolds had normal recent memory and had no difficulties in personal care activities (R. 24). The ALJ noted that treatment records showed Mr. Reynolds either reporting no mental health or psychiatric symptoms or specifically denying such symptoms at most of his appointments with Dr. Shokunbi (R. 22). Further, she found that "psychiatric exam findings throughout the treatment record . . . have been normal," reflecting that Mr. Reynolds was oriented to time, place, and person, with normal mood and affect, and normal recent memory (*Id.*).

With respect to the opinion evidence, the ALJ gave little weight to Dr. Amdur's opinion that plaintiff had major depression, on the ground that Dr. Amdur's assessment of Mr. Reynolds' mental health was inconsistent with the records from Dr. Shokunbi and the state agency doctors (R. 22-3). The ALJ summarized Dr. Amdur's findings that the MoCA test revealed that plaintiff had significant cognitive impairment, with prominent deficits in visuospatial functioning and

executive functioning (R. 20). However, the ALJ did not assign a weight to Dr. Amdur's opinion that the test showed that Mr. Reynolds had a cognitive impairment.

In sum, the ALJ concluded that Mr. Reynolds' physical and mental impairments, considered individually and in combination, were not severe (*Id.*). Because the ALJ determined that the plaintiff did not have a severe impairment from the date he filed his application in December 2014, her analysis ended at Step Two, and she denied Mr. Reynolds' application for disability benefits without addressing the remaining three steps in the five-step process (*Id.*).

## II.

In order to establish a "disability" under the Social Security Act, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). There is a five-step process to determine if a claimant qualifies for disability benefits. 20 C.F.R. § 404.1520(a)(4).[6] A negative answer at any other step than Step Three precludes a finding of disability. As we explained above, the ALJ here found that Mr. Reynolds failed at Step Two, and thus she ended her analysis there.

The "Step 2 determination is 'a *de minimis* screening for groundless claims.'" *Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016). An impairment is "not severe" only if it is a "slight abnormality" that has "no more than a minimal effect on the ability to do basic work activities," such as "[u]nderstanding, carrying out, and remembering simple instructions," "[r]esponding appropriately" to supervisors and co-workers, and "[d]ealing with changes in a routine work

---

[6] The five step process requires the ALJ to consider: (1) whether the claimant is presently unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any impairments listed in the regulations as being so severe as to preclude substantial gainful activity; (4) whether the claimant is unable to perform relevant past work; and (5) whether the claimant is unable to perform any other work existing in significant numbers in the national economy.

setting," 20 C.F.R. § 404.1521. As the court noted in *Meuser,* "an assessment of the functional limitations caused by an impairment is more appropriate for Steps 4 and 5, not Step 2." *Id.*

We review the ALJ's decision deferentially to determine if it was supported by "substantial evidence," which the Seventh Circuit has defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Summers v. Berryhill,* 864 F.3d 523, 526 (7th Cir. 2017). In reviewing the ALJ's decision, the Court will "not reweigh the evidence or substitute our judgment for that of the ALJ." *Id.* The Court is limited to determining whether the Commissioner's final decision is supported by substantial evidence and based upon proper legal criteria. *Id.*

However, an ALJ is not entitled to unlimited judicial deference. An ALJ must consider all relevant evidence and may not elect to discuss only the evidence that favors his or her ultimate conclusion. *Thomas v. Berryhill,* 17 C 241, 2018 WL 3973416 *4 (N.D.Ill. August 20, 2018). Although the ALJ need not evaluate in writing every piece of evidence in the record, the ALJ's analysis must be articulated at some minimal level and must build a logical bridge from evidence to her conclusion. *Minnick v. Colvin,* 774 F.3d 929, 935 (7th Cir. 2015).

Plaintiff offers three arguments in favor of remand: (1) the ALJ ignored the line of evidence related to Mr. Reynolds' diabetic neuropathy in his feet; (2) the ALJ erred in rejecting the opinion of Dr. Amdur related to Mr. Reynolds' depression; and (3) the ALJ failed to consider the line of evidence surrounding Mr. Reynolds' alleged cognitive impairment by ignoring the MoCA test results. We remand based on the first and third arguments, and thus do not address the second one.

A.

In finding that Mr. Reynolds did not have a severe mental health impairment, the ALJ only discussed (but gave no weight to) Dr. Amdur's opinion regarding his diagnosis of severe depression. The ALJ did not analyze Dr. Amdur's opinion that the MoCA test showed Mr. Reynolds had cognitive impairment. Therefore, even if the ALJ's assessment that plaintiff's depression is a non-severe impairment were well supported by substantial evidence, we cannot trace the ALJ's decision-making process with respect to her decision to ignore Dr, Amdur's opinion that plaintiff has a cognitive impairment.

"An ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability." *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018) (internal quotations and citations omitted). In *Gerstner*, the ALJ erred by focusing on doctor's notes about the claimant's mood and affect but ignoring that same doctor's diagnoses of depression and anxiety disorder. *Id.* at 261-62. In the instant case, the ALJ addressed only the evidence relevant to Mr. Reynolds' affective disorder. Nowhere in the discussion of severity did she discuss Mr. Reynolds' potential cognitive impairment. (R. 20-24).

The MoCA was the only objective test administered to Mr. Reynolds, and his score of 16 out of 30 suggests that he had a significant cognitive impairment (R. 319). While the ALJ mentions the results of the MoCA test in her statement of the facts (R. 20), summarization is not a substitute for analysis; an inadequate evaluation of a physician's opinion requires remand. *Williams v. Berryhill*, No. 17 C 1936, 2018 WL 264201 *6 (N.D. Ill. Jan. 2, 2018); *Cullinan v. Berryhill*, 878 F.3d 598, 605 (7th Cir. 2017).

Moreover, the MoCA is not the only evidence in the record that Mr. Reynolds had a cognitive impairment. Dr. Fine, one of the state agency doctors, noted that that Mr. Reynolds

11

exhibited "immediate memory deficit, poor fund of information, calculations problems, and problems abstracting" (R. 315). That report is consistent with both Dr. Amdur's opinion, as well as with third-party reports that indicate Mr. Reynolds had difficulty with his memory, needed repeated spoken directions, and had to be reminded weekly to do chores such as taking out the garbage (R. 195). By failing to address this entire line of evidence, we cannot trace the ALJ's reasoning for determining that Mr. Reynolds did not have a severe mental impairment.

**B.**

Mr. Reynolds also argues the ALJ erred in failing to consider the line of evidence relative to his diagnosed neuropathy. We agree. In her analysis of the severity of Mr. Reynolds' diabetes, the ALJ states, "[a] close review of the medical evidence shows the claimant without symptoms associated with diabetes. In fact, a close review of the medical evidence shows the claimant denying symptoms associated with diabetes" (R. 21).

However, our review persuades us that the medical record contains evidence that plaintiff reported foot pain associated with diabetic neuropathy that the ALJ failed to address. Mr. Reynolds began complaining of foot pain as early as April 2014 (R. 290). In July 2015, Dr. Amdur used the Romberg test to diagnose Mr. Reynolds with probable peripheral neuropathy (R. 319). Plaintiff then saw a podiatrist in December 2015, who noted that he had diminished sensation in both of his feet (R. 386). Dr. Shokunbi officially diagnosed Mr. Reynolds with diabetic neuropathy in 2016 and prescribed Norco to alleviate the pain. "[A]n ALJ may not ignore an entire line of evidence that is contrary to her findings". *Henderson v. Apfel*, 179 F.3d 507, 514 (7th Cir. 1999) 377).

The Commissioner argues that the ALJ adequately supported her decision by according "great weight" to the state agency physicians' general conclusions that Mr. Reynolds has no severe physical impairment. (R. 23). However, the state agency doctors' review of Mr. Reynolds' medical

records occurred in September 2015, which was prior to a number of events related to Mr. Reynolds' neuropathy, including: (1) his visit to the podiatrist in December 2015; (2) his treating doctor's diagnosis of diabetic neuropathy in January 2016; and (3) being prescribed gabapentin and Norco to treat his pain (R. 51-4, 63-5). It is also not apparent whether the state agency doctors considered Dr. Amdur's administration of the Romberg test or its results. We cannot assume that this evidence would have made no difference had the state agency doctors considered it. *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (prohibiting ALJs from "playing doctor" by failing to submit important recent medical results to an expert and instead interpreting them independently). *See also, Gray v. Berryhill,* No 17 CV 1185, 2018 WL 5619420 *6 (N.D.Ill. October 30, 2018) (ALJ could not rely on state agency opinion that plaintiff did not meet a Listing because doctors did not have opportunity to review certain subsequent medical evidence that might have been relevant to their decision).

The Commissioner argues that a diagnosis of diabetic neuropathy does not establish the existence or severity of an impairment. (Def. Mem. in Support at 10). We do not quarrel with that general proposition, bur conclude that it provides no basis for an ALJ to ignore evidence that would allow a proper determination as to whether an impairment is severe. The ALJ here failed to create a logical bridge between the evidence of foot pain and her conclusion that plaintiff's diagnosed diabetic neuropathy did not constitute "symptoms of diabetes." That failure that requires remand.

## CONCLUSION

For the reasons stated above, we grant Mr. Reynolds' request for remand (doc. # 12) and deny the Commissioner's request to affirm (doc. # 20). The case is remanded for further proceedings consistent with this opinion.


ENTER:

_____
SIDNEY I. SCHENKIER
United States Magistrate Judge


DATED: December 4, 2018